Laurance SIMPSON, Jr.; A.P. Adair; Carey M. Adair; Norma M. Adair, Executrix of the Estate of Carey M. Adair; Adnee Hamilton; Buckner Hinkle, Sr.; Isabell McHenry Clay, Executrix of the Estate of Norton Clay; Catesby W. Clay; Ben B. Ardery; Susan H. Clay; Susan T. Hinkle; Clarence L. Lebus, Executor of the Estate of John G. Spears; Lockhart Spears; Francis Carlton Colcord, III; W.C. Thompson; and J. Morrow Richards, Appellants,

v.

Harry LAYTART, Appellee.

No. 96–SC–639–DG.

Supreme Court of Kentucky.

Feb. 19, 1998.

W. Henry Graddy, IV, W H Graddy & Associates, Midway, Buckner Hinkle, Jr., Stites & Harbison, Lexington, James M. Lovell, Paris, for Appellants.

James Stuart Thomas, Cynthiana, for Appellee.

LEE E. SITLINGER, Jr., Special Justice.

This is the second appeal[1] in a case in which appellee, Harry Laytart, seeks dam-

---

1. *Bourbon County Joint Planning Commission v.* *Simpson,* Ky.App., 799 S.W.2d 42 (1990).

ages for abuse of process[2] arising out of a planning and zoning matter.

Harry Laytart was the owner of a tract of farm land in Bourbon County, Kentucky. In 1986, he entered into an agreement to sell a five-acre tract of his farm land to Woodford and Bonnie Jean Wilson. Laytart sought a determination from the Bourbon County Joint Planning Commission that this sale would not constitute a subdivision of land necessitating a zoning change from agricultural to residential, but merely a "division of land for agricultural purposes" as defined in KRS 100.111(22).

One of the appellants, Laurance Simpson, Jr., appeared at the Planning Commission meeting at which Laytart's application was considered and, according to the Commission's minutes, "expressed his concerns over the procedures in which land divisions are considered." He stated to the Commission that "there was a need to determine if the land divisions were for agricultural purposes prior to approval by the Commission."

Despite Simpson's expressed concerns, the Commission took no proof and approved Laytart's request based on Laytart's application and an affidavit of Woodford Wilson.[3]

Simpson and fourteen other residents and property owners of agricultural land in Bourbon County appealed the Planning Commission's decision to the Bourbon Circuit Court. They alleged that the Commission lacked evidence which would indicate the proposed five-acre tract served any agricultural purpose and that the Commission acted improperly in not requiring Laytart to obtain a zone change classification from agricultural to residential and in approving Laytart's request.

The fifteen property owners coupled their appeal with a complaint alleging that Laytart was attempting to use agriculturally zoned property for residential purposes rather than agricultural purposes, that the Commission did not reasonably inquire into the proposed use of the subdivided lot and that the Commission acted arbitrarily and capriciously in approving Laytart's request. They also sought to require the Commission to conduct an evidentiary hearing before granting a division of land purported to be for agricultural purposes.

Laytart answered the complaint denying any improper purpose and asserting that both he and the Commission had acted correctly and within the law.[4] Subsequently, Laytart was forced to release Wilson from the agreement to purchase his five-acre tract and Laytart filed a counterclaim against Simpson and the other fourteen property owners for compensatory and punitive damages[5] alleging abuse of process and interference with contract.

By order of the Bourbon Circuit Court, this case was remanded to the Commission "with instructions to conduct a full evidentiary hearing and to make findings based upon the evidence heard by it as to whether Mr. Laytart's tract will be agricultural or residential in use."[6] All other claims, including Laytart's counterclaim, were dismissed.

On appeal, the Kentucky Court of Appeals reversed the Trial Court's summary adjudication of Laytart's counterclaim for abuse of process and interference with contract stating as follows:[7]

> By claiming abuse of process and interference with contract, Laytart has alleged that the appellees acted with an improper

---

**2.** An additional cause of action for interference with a contract has not been pursued before this Court.

**3.** In the form affidavit, Wilson stated that he intended to construct a "home" and an "outside storage barn" on the five-acre tract and that he intended to grow "tobacco" and a "garden."

**4.** KRS 100.111(2); KRS 100.111(22)

**5.** Laytart also claimed that his inability to conclude the sale of the five-acre lot to Wilson forced him into bankruptcy.

**6.** After the Planning Committee held the hearing as ordered, Simpson and the other fourteen property owners announced that they were satisfied and sought no further relief.

**7.** The appeal and complaint of the fifteen property owners was dismissed as moot on appeal. *Bourbon County Joint Planning Commission v. Simpson, supra,* at p. 45

purpose or without justification. The burden of proof is on Laytart, and it is a difficult one: the appellees are entitled to attend planning commission hearings, and 'injured or aggrieved' persons have a right of appeal on adverse decisions of that body. *See* KRS 100.347. However, we do not think that the grant of a statutory privilege automatically exempts those who use it from accusation of improper motive. We reiterate, the burden of proof may be a difficult one, but Laytart has been given no opportunity to meet it. We conclude that Laytart should be allowed to pursue his cause of action, however quixotic it may seem. *Bourbon County Joint Planning Commission v. Simpson, supra,* at p. 46.

Upon remand to the circuit court, the regular judge of the court recused himself and a special judge was appointed. After considerable additional discovery was taken, a renewed motion for summary judgment was filed by the fifteen property owners with regard to Laytart's claims against them. Following extensive briefing and argument, the circuit court again granted them summary judgment concluding that Laytart had offered no evidence of actual malice or ill-will nor any basis to imply malice to support a cause of action for contractual interference nor had Laytart offered any evidence of any improper or ulterior purpose nor of a willful act in the use of process not proper in the regular conduct of a proceeding to support a cause of action for abuse of process.

On appeal, the Kentucky Court of Appeals affirmed the Trial Court's summary judgment with regard to Laytart's "interference with contract" claims concluding that the fifteen property owners "had a legally protected interest and that they used a statutorily authorized method to assert it." [8]

With respect to Laytart's "abuse of process" claims, however, the Court of Appeals reversed holding that whether there was "an improper motive" was a question for a jury to resolve.[9] On motion of the fifteen proper-

ty owners from that ruling, this Court granted discretionary review.

■ An action for abuse of process is "the irregular or wrongful employment of a judicial proceeding." *Stoll Oil Refining Company v. Pierce,* Ky., 337 S.W.2d 263 (1960)

■ Abuse of process differs from malicious prosecution in that malicious prosecution consists of commencing an action or causing process to issue maliciously or without justification. Abuse of process, however, consists of "the employment of legal process for some other purpose than that which it was intended by the law to effect." *Raine v. Drasin,* Ky., 621 S.W.2d 895 (1981); *Flynn. v. Songer,* Ky., 399 S.W.2d 491 (1966)

Historically, an action for abuse of process appears to have had its origin in English law in the early 19th century. In *Grainger v. Hill,* 4 Bing. N.C. 212, 132 Eng. Rep. 769 (1838), defendant had plaintiff arrested under civil process in order to compel him through duress to surrender the register of a vessel, without which plaintiff could not go to sea. Since the proceeding had not been terminated, a cause of action for malicious prosecution did not exist. The Court refused to permit its process to be misused for such a purpose and thus held the defendant liable. W. Prosser, *Handbook of the Law of Torts,* Section 121 (4th ed.1971).

■ The essential elements of an action for abuse of process are (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding. *Bonnie Braes Farms Inc. v. Robinson,* Ky.App., 598 S.W.2d 765 (1980); *Williams v. Central Concrete Inc.,* Ky.App., 599 S.W.2d 460 (1980). Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad

---

8. As previously stated, the Court of Appeals' affirmance of the Bourbon County Court's summary judgment with respect to Laytart's "interference with contract" claims has not been challenged before this Court.

9. The three judge Court of Appeals' panel divided 2–1 on this issue.

intentions. W. Prosser, *Handbook of the Law of Torts,* Section 121 (4th ed.1971).

In *Mullins v. Richards,* Ky.App., 705 S.W.2d 951 (1986), customers of an automobile repair shop contested the quality and cost of the repairs and refused to pay for the repairs. After hearing testimony of the disgruntled customers, the grand jury returned indictments against the shop owner for theft by deception. A mistrial in the criminal action was declared after the court heard testimony of only one witness, one of the disgruntled customers. The shop owner thereupon brought an action for abuse of process against the customers. In affirming the Trial Court's dismissal of the shop owner's case by a directed verdict, the Court of Appeals noted the fatal absence of a crucial element of the shop owner's abuse of process case, "Although appellees may have had an ulterior purpose in securing the indictments against appellant, the record contains no evidence that appellees attempted to use the indictments against appellant outside the criminal proceeding." *Id.* at 952.

In the present action, neither essential element of a cause of action for abuse of process appears to be present and the absence of either is fatal to Laytart's case.

■ Laytart contends that the "ulterior purpose" behind the fifteen property owners' "appeal and complaint" was to prevent the division of farm land, including Laytart's property, into lots of less than ten acres. Laytart argues that the "appeal and complaint" went beyond the traditional issue of arbitrariness of the Commission's ruling but sought relief broader in scope than those implicated by the Commission's mere approval of Laytart's specific request, i.e., issues questioning the validity of the Commission's procedural schemes for approving applications regarding the subdivision of land for agricultural purposes, issues pertaining to adjudication of any future applications absent a request for a zoning change, and issues pertaining to the requirement of evidentiary hearings, including rights of cross-examination, on such applications.

We are not persuaded, however, that such a motive or conduct, even if proven, is sufficient to satisfy the element of an "ulterior purpose" required to support an abuse of process claim.

Contrary to Laytart's contentions, we have specifically sanctioned and upheld such a procedure to assert claims which are broader in scope than what is implicated within the context of the ordinary zoning appeal. *Greater Cincinnati Marine Service, Inc. v. City of Ludlow,* Ky., 602 S.W.2d 427 (1980). Further, a review of the complaint and appeal, testimony, correspondence and other evidence in the record clearly demonstrate a motive to prevent the planning commission from routinely and summarily approving subdivision of land for agricultural purposes and to impose additional restrictions upon the Bourbon County zoning process in order to make it more difficult to secure approval of such subdivisions. Such motive was an appropriate utilization of the available judicial process. *Green v. Bourbon County Joint Planning Commission,* Ky., 637 S.W.2d 626 (1982). In sum, the record is devoid of any "ulterior purpose" such that would fulfill this essential element of an abuse of process claim even if proven.

■ In addition, there is no evidence of any willful act in the use of the process not proper in the regular course of the proceeding. As previously stated, there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even if we assume *arguendo* bad intentions.

Such conduct "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property on the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." W. Prosser, *Handbook of the Law of Torts,* Section 121 (4th ed.1971). In the present case there is an absence of any such improper use of the process.

While we continue to adhere to the principle that summary judgment is to be cautiously applied and should not be used as a substi-

tute for trial, it appears to this Court that it would be impossible for Laytart to produce evidence at trial warranting a judgment in his favor based on the facts and circumstances presented in this case. The decision of the Trial Court granting a summary judgment dismissal of Laytart's claims for abuse of process against appellants herein was therefore appropriate. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991)

We have been invited to consider and adopt the *Noerr–Pennington* Doctrine based on decisions rendered by the United States Supreme Court in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In view of the conclusions which we have reached in this opinion, we decline that invitation at this time.

Accordingly, we reverse so much of the decision of the Court of Appeals which reversed the Trial Court's summary judgment on the abuse of process claims and we affirm the decision of the Bourbon Circuit Court granting summary judgment in favor of appellants on all issues.

STEPHENS, C.J., COOPER, GRAVES, LAMBERT, STUMBO and WINTERSHEIMER, JJ., and LEE E. SITLINGER, Jr., Special Justice, concur.

JOHNSTONE, J., not sitting.