**Linda D. PENNINGTON,**
**Plaintiff–Appellant,**

v.

**DOLLAR TREE STORES, INC. and**
**Glimcher Properties, Ltd.**
**Defendants–Appellees.**

No. 00–6130.

United States Court of Appeals,
Sixth Circuit.

Jan. 30, 2002.

484

Before MOORE and COLE, Circuit Judges; O'MEARA, District Judge.*

O'MEARA, District Judge.

This case arises out of the arrest and prosecution of Plaintiff/Appellant Linda D. Pennington for allegedly shoplifting $6.00 worth of candy from a Dollar Tree Store in Ashland, Kentucky. On August 15, 1997, after a dispute over the candy with a Dollar Tree employee and a mall security guard employed by Glimcher Properties, Ms. Pennington was arrested by the Ashland Police. She was charged with shoplifting, but the county prosecutor later dropped the charges in exchange for her stipulation that probable cause existed for her arrest. Ms. Pennington then sued Defendants/Appellees Dollar Tree Stores, Inc. and Glimcher Properties, Ltd. in diversity for (1) false imprisonment; (2) malicious prosecution; (3) abuse of process; (4) defamation; (5) intentional infliction of emotion distress; (6) negligence; and (7) negligent hiring. On July 17, 2000, the district court granted Defendant/Appellees' joint motion for summary judgment on all claims. This court now AFFIRMS the ruling of the district court.

## I. BACKGROUND

On August 15, 1997, Ms. Pennington was shopping in the Dollar Tree store in the Ashland Town Center in Ashland, Kentucky with her young son and two nieces,

* The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

at the time aged six, seven, and eight. She gave each of the three children some cash with which to purchase items, and each child went through the checkout more than once. When the family was preparing to leave the store, Crystal Gould, the store's manager, stopped them and asked to see all the receipts for their purchases. After reviewing the receipts. Ms. Gould claimed she could not find one for a toy in the possession of Ms. Pennington's son. Though Ms. Pennington believed the toy had been paid for previously, she did tender the price for it at this point. Ms. Gould also claimed that $6.00 worth of candy had not paid been for, but Ms. Pennington insisted that it had. An argument ensued, witnessed by the children and the store's clerk and security guard. When Ms. Gould threatened to prosecute, Ms. Pennington left the store, and she asserts that she did so without the candy.

At this point, Ms. Gould and the security guard summoned the Ashland police. Based upon the comments of Ms. Gould and the guard, the police arrested Ms. Pennington just outside the mall. She was charged with petty theft and spent the night in jail. The next morning, she was released on her own recognizance. Ms. Pennington had no prior criminal record.

On July 7, 1998, the theft charges were dropped in exchange for Ms. Pennington's stipulation that there was probable cause for her arrest and charge. On July 6, 1999, Ms. Pennington filed her suit against the Defendants–Appellees. On May 2, 2000, Appellees moved for summary judgment on all counts on the ground that Ms. Pennington's stipulation of probable cause insulated them from liability under Kentucky law. Ms. Pennington argues that the stipulation was limited to the insulating of the government and so should not act as a bar to suit against Appellees. The district court agreed with the Appellees and granted summary judgment based on the stipulation argument, with a few additional points for the seven different torts that will be discussed below. Judgment for Appellees was entered on July 17, 2000, and Ms. Pennington timely filed this appeal.

## II. *DISCUSSION*

### A. Standard of Review

This court reviews a district court's grant of summary judgment *de novo*. *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir.2001).

A motion for summary judgment under Fed.R.Civ.P. 56 may be granted if the pleadings and all supporting documentation show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). However, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view all the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir. 1984). Once the moving party discharges its burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R.Civ.P. 56(e); *Talley*, 61 F.3d at 1245. To create a genuine issue of material fact, however, the nonmovant must do more

than present some evidence on a disputed issue; he must produce evidence of "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

This court also reviews the district court's interpretation and application of state law *de novo. Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 512 (6th Cir. 2001) (citing *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)).

### B. *Stipulation of Probable Cause*

In granting Appellees' motion, the district court relied upon *Broaddus v. Campbell,* 911 S.W.2d 281 (Ky.Ct.App.1995) for its finding that Ms. Pennington's stipulation of probable cause precluded her tort suits. The facts of *Broaddus* are very similar to those of the instant case: Mr. Broaddus was indicted for theft upon the testimony of Mr. Campbell, and the indictment was dismissed. The order of dismissal read: "[d]efendant [has] stipulated probable cause for the issuance of the indictment...." Mr. Broaddus then attempted to sue Mr. Campbell for malicious prosecution, but the state appellate court affirmed a dismissal of his case because "where there is a specific finding of probable cause in the underlying criminal action ... a malicious prosecution action cannot be maintained" since lack of probable cause is one of the elements of that tort. *Id.* at 283. The court emphasized that it would be inequitable to a complaining witness to allow an accused to sue him or her for an unfounded prosecution when the accused has stipulated that probable cause exists. *Id.* at 284. Mr. Broaddus insisted that the intent of his stipulation was the protection of the government prosecutors, not Mr. Campbell, but the court held that the stipulation was a general one that did not exclude Mr. Campbell and stated in

dicta that "[i]t would have been a simple matter for Broaddus to have structured the agreement to preserve his right to bring a malicious prosecution action against the complaining witness, Campbell, but he did not." *Id.* Ms. Pennington now seizes upon that line and argues that her stipulation did preserve her causes of action against the Appellees. In contrast to *Broaddus,* she argues, her stipulation was limited instead of general and that there is a least a genuine issue of material fact as to the whether the stipulation was general or limited.

Ms. Pennington presented that same argument to the district court, but the trial court interpreted *Broaddus* to mean that a person who admits in open court and on the record that probable cause exists cannot maintain a malicious prosecution action. The district court further emphasized the Kentucky court's point about the unfairness to the complaining witness of such a suit.

■ The stipulation here was oral, not written. It was given on the record in open court on July 7,2000. For that session of court, there are two transcripts in the appendix. The two are very similar and are clearly both transcripts of the same proceeding, but do contain minor differences. It is not clear from the record which is the "official" transcript, and both appear to have been transcribed from audiotape of the actual hearing.

The transcript prepared by a Ms. Sergent reads:

Judge Sinnette: Raise your right hand. So you swear the testimony you are about to give in this case be the truth and nothing but the truth so help you God?

Witness [Pennington]: Inaudible.

Judge Sinnette: Stipulation of probable cause, that they had cause to stop you,

okay, based upon probability, all right? And it's to be dismissed?

Mr. King [prosecutor]: Yes your honor.

The other transcript, prepared by a Ms. Smith, fills in what the other transcript claims is inaudible. It reads:

Judge Sinnette: I would like for her to. Raise your right hand. Do you swear the testimony you are about to give in this case will be the truth, and nothing but the truth, so help you God?

Defendant [Pennington]: Yes.

Judge Sinnette: Stipulation of probable cause, that they had cause to stop you. Based on probability.

Defendant: Correct.

Judge Sinnette: All right? It is to be dismissed?

Attorney for Plaintiff: Yes sir.

Neither transcript gives any indication that the stipulation was in any way limited. Neither Ms. Pennington nor her attorney made any comment when the judge suggested the very general language seen above. Ms. Pennington argues that it was her intent to create a limited stipulation, but mere intent to do so is not enough. *See Broaddus*, 911 S.W.2d at 284.

There are also statements by the people present that day that describe the contents of the stipulation. Ms. Pennington, in her affidavit, states that she discussed the need to limit her stipulation to the government with her civil counsel prior to entering the stipulation and:

8. After conferring with the assistant prosecuting attorney, Mr. Hewlett told me that the Boyd County District Attorney's sole concern was the protection from civil liability of the Commonwealth, prosecutors, and law enforcement. For this reason, the Boyd County Attorney did not object to the limitations I placed on my stipulation of probable cause.

9. On July 7, 1998, the agreed upon stipulation was entered on the record in open court. . . . (Pennington Aff. ¶¶ 8–9).

Mr. Hewlett, her criminal attorney, gave two affidavits. In the first he stated that the government moved to dismiss the criminal charge upon "stipulation that the Commonwealth, the County, and the police officers who arrested her, had acted upon probable cause . . ." (Hewlett Aff. of 4/20/00 ¶ 6). In a supplemental affidavit, Mr. Hewlett repeated the above statement and added that neither side addressed whether Dollar Tree or Glimcher would be included or excluded from the stipulation. (Hewlett Aff. of 7/2/00 ¶ 3). Ms. Pennington argues that the supplemental affidavit was prepared at the behest of Defendants' counsel and that the two affidavits are inconsistent.

Finally, there is a letter from Mr. King, the prosecutor in the case. He states that he has no memory of whether there was an express limitation of the stipulation, but that he would likely not have entered into such a limited stipulation since he sometimes represents Glimcher in his private law practice. He further stated that if such a limited stipulation were agreed to, he would have either required it to be in writing or at least put the reservations on the record.

The district court asserted that *Broaddus* mandates that a stipulation given in open court precludes later suits. Ms. Pennington argues that she has established a genuine issue of material fact about the scope of her stipulation, but the transcripts mandate a finding that she has not. There is no evidence in either transcript that either Ms. Pennington or her counsel limited the stipulation, and the other affidavits do not change that assessment. But even if that is a genuine issue, it would still not

preclude summary judgment on many of her tort claims.

### C. Individual Tort Claims

#### 1. Malicious prosecution

In Kentucky, this tort has six elements:

(1) [T]he institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceedings, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.

*Broaddus*, 911 S.W.2d at 283. In that case, the court held that a compromise dismissal is not a termination in favor of the defendant, and that a stipulation of probable cause is such a compromise. *Id.* at 284. Ms. Pennington therefore cannot demonstrate the element of favorable termination, no matter what her stipulation said.

#### 2. False imprisonment

To recover on this tort, Ms. Pennington must establish that she was detained and that the detention was unlawful. *Wal–Mart Stores, Inc. v. Mitchell*, 877 S.W.2d 616, 617 (Ky.Ct.App.1994). Kentucky has also established a defense to this tort when:

(1) A peace officer, security agent of a mercantile establishment, merchant or merchant's employee who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person may take the person into custody and detain him in a reasonable manner for a reasonable length of time, on the premises of the mercantile establishment or off the premises of the mercantile establishment, if the persons enumerated in this section are in fresh pursuit, for any or all of the following purposes:

(c) To make reasonable inquiry as to whether such person has in his possession unpurchased merchandise, and to make reasonable investigation of the ownership of such merchandise: ...

(e) To inform a peace officer or law enforcement agency of the detention of the person and to surrender the person to the custody of a peace officer ...

Ky.Rev.Stat. Ann. § 433.236. Ms. Pennington stipulated to probable cause and did not limit it to the government officials, so the store employee also had probable cause. The Defendants/Appellees get the protection of this statute since Ms. Gould's actions to briefly detain Ms. Pennington to inquire about the candy and then call the police are reasonable under the statute if there is probable cause. Further, Ms. Pennington in her appellate brief states that the "payment of the candy was legitimately in dispute." That statement was made to defend Ms. Pennington's actions, but it also indicates that the store employee had a legitimate concern, and so the brief detention of Ms. Pennington would be justified even if she had not formally stipulated to probable cause.

#### 3. Abuse of process

The elements of this tort are "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky.1998). This tort is distinct from that for malicious prosecution because it involves the " 'employment of legal process for some other purpose than that which it was intended by the law to effect.' " *Id.* (citation omitted). The district court found in favor of Appellees on this count

because Ms. Pennington's stipulation of probable cause meant that she could not establish that the allegations against her were born of an ulterior motive. Additionally, even if they had bad intentions, the Appellees only used the legal process to effect the intended purpose of prosecuting suspected shoplifters, as provided in the statute cited above, Ky.Rev.Stat. Ann. § 433.236. There was nothing about this case that was not a part of the regular conduct of the legal proceeding, so Ms. Pennington could not establish the necessary elements of this tort even had she not stipulated to probable cause.

### 4. Defamation

 The elements of defamation in Kentucky are: (1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation. *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky.Ct.App.1981). Falsely imputing criminal acts to another is slanderous *per se*. *Id.* at 274. However, the publisher of allegedly defamatory remarks about a private person must have acted negligently or intentionally to be liable in tort. *McCall v. Courier–Journal and Louisville Times Co.*, 623 S.W.2d 882, 886 (Ky.1981); *Columbia Sussex Corp.*, 627 S.W.2d at 273.

The district court applied that standard when it held that Ms. Pennington's stipulation of probable cause prevented her from asserting that Appellees defamed her "in a negligent or reckless manner." That is the correct analysis: the question is not whether the accusation about Ms. Pennington is actually false, but whether Appellees acted negligently in accusing her. As discussed above and based on her stipulation of probable cause and her admission that payment of the candy was legitimately in dispute, Ms. Pennington has not set forth facts sufficient to create a material question of fact about whether Appellees acted negligently.

### 5. Intentional infliction of emotional distress

 To establish this tort in Kentucky, a plaintiff must show that (1) the defendant's conduct was intentional or reckless; (2) the conduct is outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) a causal connection exists between defendant's conduct and plaintiff's emotional distress; and (4) the emotional distress must be severe. *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky.1999). The district court found that the stipulation of probable cause prevented Ms. Pennington from asserting that Defendants acted intentionally or recklessly. But even without the stipulation, the requirement of outrageous and intolerable conduct is a high bar for a plaintiff to meet, and the conduct complained of here does not rise to that standard. *See, e.g., Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1 (Ky. 1990) (finding that callous behavior surrounding a stillbirth did not meet the standard).

### 6. Negligence

 To establish a claim for negligence, a plaintiff must establish (1) the existence of a legal duty that requires the defendant to conform to a certain standard of conduct; (2) the defendant's failure to conform to that standard; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage. *Radcliff Homes, Inc. v. Jackson*, 766 S.W.2d 63, 68 (Ky.Ct. App.1989). The district court considered this tort together with the negligent hiring claim. Ms. Pennington in her appellate brief separates the claims and alleges that Appellees' negligence occurred in their

"fail[ure] to exercise ordinary care in apprehending, detaining and prosecuting Ms. Pennington by lodging a false shoplifting complaint" with the police. But as Ky. Rev.Stat. Ann. § 433.236 specifically allowed Appellees to detain suspected shoplifters on probable cause, Ms. Pennington stipulated to probable cause, and even she admits that the payment for the candy was legitimately in dispute, she cannot establish that Appellees violated any applicable standard of care.

### 7. Negligent Hiring

In Kentucky, "an employer can be held liable when its failure to exercise ordinary care in hiring or retraining an employee creates a foreseeable risk of harm to a third person." *Oakley v. Flor–Shin, Inc.,* 964 S.W.2d 438, 442 (Ky.Ct. App.1998) (citations omitted). Under this theory, Ms. Pennington must demonstrate that Appellees knew or should have known that the store manager was unfit for her job and that her placement or retention as store manager created a risk of unreasonable harm. *Id.; Stalbosky v. Belew,* 205 F.3d 890, 894 (6th Cir.2000) (applying Kentucky law). Ms. Pennington argues on appeal that summary judgment was granted to Appellees before she had an opportunity to conduct discovery on this issue.

The district court found that Ms. Pennington had "failed to assert any facts as to how the store manager was incompetent." That is true, but it is also true that Ms. Pennington was trying to engage in discovery on that point. But what Ms. Pennington's claims lack is the foreseeable harm. The store employee's actions against Ms. Pennington were legal and justified if she had probable cause to stop the customer, and as discussed above, Ms. Pennington has both stipulated to probable cause and admitted to a legitimate dispute.

Thus, there is no harm here on which Ms. Pennington can base this claim.

### III. CONCLUSION

The decision of the district court to grant summary judgment to Defendants/Appellees on all counts is AFFIRMED.