NOT RECOMMENDED FOR PUBLICATION
**File Name:  07a0836n.06**
**Filed:  December 11, 2007**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**No. 07-5016**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | |
| **v.** | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR THE** |
| **CAROLYN JOAN PATRICK,** | ) | **EASTERN DISTRICT OF KENTUCKY,** |
| | ) | |
| **Defendant-Appellant.** | ) | |

**BEFORE:    KEITH and CLAY, Circuit Judges; and STEEH, District Judge.**[*]

**STEEH, District Judge.**  Defendant Carolyn Joan Patrick ("Patrick") appeals from a district court decision denying her motion to suppress certain records seized from a building which were used to prove charges of tax fraud against her.  Because Patrick had no reasonable expectation of privacy in the building where her records were left after an eviction, we **AFFIRM** the district court's decision denying the motion to suppress.

**FACTUAL BACKGROUND**

In 1997, defendant Patrick entered into a written agreement with a financial consultant in which she agreed to invest his clients' funds by trading in bankable negotiable instruments. Instead, Patrick converted most of the funds to herself, and used over $1,000,000 to start and fund

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Lexington Specialties College. In 1998, Patrick purchased a commercial building at 151 Walton Avenue in Lexington to house the school.

On June 14, 2001, Patrick sold the Walton Avenue building, and the school thereafter became a tenant of the new landlord, GP Enterprises. The school failed to make its monthly rental payments and the landlord initiated eviction proceedings in state court on November 20, 2001. On July 8, 2002, the court ordered that the school be evicted. On July 10, 2002, a constable delivered legal possession of the building to the landlord and the locks were changed. Some furniture, computers and boxes of records belonging to Patrick and the school were left behind.

Patrick failed to include the money she had obtained from the financial consultant through fraud on her 1997 income tax return that she filed in 2001. In 2002, Clark Caywood, an IRS agent, was investigating Patrick for possible criminal tax violations. After learning that Patrick's brother was the President of Lexington Specialties College, who likely possessed the school's records, Agent Caywood served an IRS summons upon him on June 6, 2002. Agent Caywood had several conversations with Patrick, her attorney, and her brother, for over two months, about producing the records, but no records were produced pursuant to the summons.

On August 13, 2002, Agent Caywood learned about the eviction when he discovered the Walton Avenue building was for sale. The owner and landlord of the building instructed the realtor to give Agent Caywood access to the building. When Caywood arrived at the building to meet the realtor, he saw Patrick's brother placing boxes of records in a van. The realtor stated that Patrick's brother took five boxes of records with him, and the realtor encouraged him to take more

because the boxes had to be removed by the time the building sold. The realtor stated that if the records were not removed, they would be thrown out.

After examining some of the records remaining in the building, Caywood told the realtor he would like to take the records. After consulting with the building's owner by telephone, the realtor agreed to give the records to Caywood if he produced a subpoena. That same afternoon, Caywood returned with an IRS administrative summons that directed the building's owner to produce the records. Caywood, who was accompanied by another IRS agent, removed approximately 15 boxes of records. As he was loading the boxes, Patrick arrived at the building and inquired what he was doing with the records. Caywood refused to provide an explanation.

The IRS used the seized records to build a tax fraud case against Patrick. Patrick filed a motion to suppress, which was denied. Patrick pled guilty to filing a false income tax return, preserving the issue of the search for appeal.

## DISCUSSION

### *Standard of Review*

With regard to a motion to suppress, this Court reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *See, e.g., United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). "Where the district court has denied the motion to suppress, 'the appellate court must consider the evidence in the light most favorable to the government.'" *United States v. Poole*, 407 F.3d 767, 772 (6th Cir. 2005) (quoting *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc)).

## I. Expectation of Privacy

Patrick may challenge the evidence Agent Caywood took from the Walton Avenue building only if her "own constitutional rights have been violated." *United States v. Davis*, 430 F.3d 345, 359-60 (6th Cir. 2005) (citing *United States v. Salvucci*, 448 U.S. 83, 86-87, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). Patrick has "the burden of demonstrating that [she] had a legitimate expectation of privacy in the place that was searched." *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). If she had no legitimate expectation of privacy regarding the Walton Avenue building, then she may not contest the search. *United States v. Dillard*, 438 F.3d 675, 682 (6th Cir. 2006).

The court engages in a two-part inquiry to determine whether a legitimate expectation of privacy exists. "First, we ask whether the individual, by conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private . . . . Second, we inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." *See Bond v. United States*, 529 U.S. 334, 338, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000) (citation, internal quotation marks, and alterations omitted).

"The 'factors to be considered in determining whether there was a legitimate expectation of privacy include ownership, lawful possession, or lawful control of the premises searched.'" *United States v. Hunyady*, 409 F.3d 297, 301 (6th Cir. 2005) (quoting *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998)). "Other factors include whether the defendant has the right to exclude others from the place in question; whether he has taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free

4

from governmental intrusion; and whether he was legitimately on the premises." *United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000) (citations omitted).

In this case, Patrick did not exhibit an actual subjective expectation of privacy in the place where the school's records were stored. Patrick had no legitimate expectation of privacy after she was evicted, the building's locks were changed, and she no longer had access to the building. Patrick knew that Agent Caywood was seeking the school's records, yet she left the records in a building where she had no right of access. Patrick was aware of her inability to enter the building, as demonstrated by the fact that she stayed outside the building while Caywood took physical custody of boxes of records. Patrick could no longer exercise a right to exclude others. In fact, the building's owner had open access to all documents that Patrick left behind, and the owner could permit others to view the documents. Patrick even admits that the property owner had the right to throw the records in the trash and she would have no basis to complain.

Patrick argues that she did have a legitimate expectation of privacy in the records that were taken by the IRS because the property owner was acting as a trustee or bailee. The same analysis of Patrick's expectation of privacy in the place where the records were stored applies if there was a trust or bailment. *See, e.g., Rawlings v. Kentucky*, 448 U.S. 98, 105-06, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (considered privacy expectations of narcotics' owner who had relinquished custody of drugs to another person's purse, i.e., the bailor, and found no legitimate expectation of privacy in said purse). The evidence is that Patrick left the records behind when she was evicted. The property owner wanted Patrick and her brother to retrieve the records for his own convenience in clearing out the property so it could be sold. Patrick even admitted that the property owner could have thrown the records away and she would have no recourse. Thus,

whatever duties Patrick seeks to impose on her former landlord in this case are so ill-defined that society would not be prepared to recognize that such "duties" give rise to a reasonable expectation of privacy.

## II. Abuse of Process

Agent Caywood was told by the property owner he needed to produce a subpoena before he would be permitted to take any records belonging to Patrick. Instead of obtaining a subpoena from a court, Caywood drafted an IRS administrative summons, which he used to mislead the property owner into granting his consent to take the records.

In Kentucky, an abuse of process claim requires an ulterior purpose and a willful act that uses the process improperly. *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1988). It appears that Agent Caywood used the IRS summons, which is not self-enforcing and does not take the place of a court-ordered subpoena, to induce the property owner into giving his consent to take the records. Agent Caywood thus committed a willful act that used the summons process improperly. *See United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). However, there is no evidence of an ulterior motive in this case. Caywood was merely carrying out the process of the administrative summons to its authorized conclusions. The summons identified records to be turned over to the IRS, and Caywood used the summons to this end. Moreover, even if the property owner has a cause of action for abuse of process, Patrick does not. There was no ulterior purpose or willful act using the process improperly as to Patrick.

## CONCLUSION

6

Because defendant did not have a reasonable expectation of privacy in the place where her records were stored, the district court correctly denied her motion to suppress. Accordingly, the decision of the district court is **AFFIRMED**.