**Bobby GARCIA, d/b/a Autobahn Automotive, Appellant**

v.

**Larry WHITAKER, Appellee.**

No. 2011–SC–000550–DG.

Supreme Court of Kentucky.

June 20, 2013.

David Ora Smith, Marcia A. Smith, Corbin, for appellant.

Nicholas C.A. Vaughn, Somerset, for appellee.

Opinion of the Court by Justice
CUNNINGHAM.

Appellant, Bobby Garcia, d/b/a Autobahn Automotive, appeals the Pulaski Circuit Court's order directing a verdict in favor of the Appellee, Larry Whitaker, on the charges of malicious prosecution and abuse of process.

Bobby Garcia owns and operates Autobahn Automotive in Pulaski County, Kentucky. Autobahn Automotive is a sole proprietorship that provides mechanical repairs to foreign vehicles. Larry Whitaker is an attorney who also resides in Pulaski County, Kentucky. In September of 2006, the engine of Whitaker's 1995 Porsche GTS failed to start. The vehicle was brought to Autobahn Automotive. Garcia and Whitaker failed to execute a written contract, but it was understood that Whitaker would pay Garcia upon completion of the necessary repairs.

Garcia ran diagnostics on the vehicle to determine the source of the mechanical failure. Garcia determined that the Porsche had a broken timing belt, an "interference engine," and a damaged battery. Garcia also uncovered what appeared to be a leak in each of the vehicle's eight cylinders, indicating damage to the valve train. Garcia notified Whitaker that the cost to repair his Porsche would range from $5,000 to $8,000. Unbeknownst to Whitaker, Garcia transported the vehicle to Porsche of Lexington for a second opinion. The dealership agreed with Garcia's diagnostics. Garcia determined that it would be more beneficial to have the dealership repair the car because it would provide Whitaker with a two-year warranty, something Garcia himself could not provide. Accordingly, Garcia paid Porsche of Lexington $6,689.40 to repair Whitaker's vehicle. By early December of 2006, Whitaker's Porsche was finally fixed and transported back to Autobahn Automotive.

On December 4, 2006, Garcia brought to Whitaker at his law office his newly repaired Porsche. What transpired at this meeting is in dispute. Garcia testified that he presented Whitaker with a bill in the amount of $7,978.74, which the latter refused to pay. Garcia also stated that he offered Whitaker the keys to test drive the vehicle, but Whitaker declined. Whitaker, however, testified that Garcia requested $10,000. Whitaker refused to pay Garcia absent proof that Garcia had actually purchased the parts he claimed to have installed. Garcia retained possession of Whit-

aker's Porsche as collateral and agreed to return the following day with receipts.

On December 5, 2012, Garcia returned to Whitaker's office with an Autobahn Automotive itemized invoice in the amount of $7,978.74. Once more, there is conflicting testimony as to what actually occurred during this second meeting. The meeting ended without any resolution. Fearing that Whitaker or his acquaintances would obtain the vehicle without paying the debt, Garcia hid the Porsche in his neighbor's garage.

Whitaker testified that, on December 6, 2006, Garcia agreed to meet at his office by noon with the requested receipts. Whitaker additionally testified that he implored Bill Thompson, the Pulaski County Attorney, to call Garcia and advise him to bring the receipts or Whitaker's car to the County Attorney's office by noon. Garcia testified to the contrary and stated that Whitaker called him past noon demanding receipts. Subsequently, Thompson contacted Garcia and ordered him to bring the requested receipts to the County Attorney's office as soon as possible. Shortly thereafter, Garcia brought copies of the invoices from both Autobahn Automotive and Porsche of Lexington to the County Attorney's office. At that very same time, Whitaker was filing a criminal complaint against Garcia.

Later that afternoon, Pulaski District Court Judge Kathryn Wood issued a warrant for Garcia's arrest for failure to make required disposition of property, in violation of KRS 514.070. Whitaker accompanied the deputy sheriff and detective to Garcia's residence to serve the arrest warrant. The sheriff ordered Garcia to disclose the whereabouts of Whitaker's Porsche, after which Whitaker located the vehicle and regained possession. Garcia was arrested and his bond set at $10,000. He spent the night in jail. The following day, Garcia posted bail after it was reduced to $1,000. The Commonwealth failed to seek an indictment and, after several hearings, the charges against Garcia were dismissed.

In January of 2007, Garcia filed a mechanic's lien in the amount of $8,028.74 plus interest. In February of 2007, Garcia brought suit against Whitaker to enforce the mechanic's lien. The complaint also claimed damages for malicious prosecution, abuse of process, false imprisonment, slander, libel, and outrageous conduct. Whitaker filed a countersuit, alleging the mechanic's lien was invalid. In March of 2009, a jury trial was conducted in the Pulaski Circuit Court. At the conclusion of the evidence, the trial court determined that Whitaker qualified for the advice of counsel defense and directed a verdict in his favor on the malicious prosecution claim. The trial court also granted Whitaker a directed verdict on the abuse of process, false imprisonment, slander, libel, and outrageous conduct claims, stating that the charges failed as a matter of law because each claim stemmed from the malicious prosecution charge. Lastly, the trial court concluded that Garcia asserted a valid mechanic's lien and allowed the jury to determine the amount owed to Garcia. Whitaker voluntarily dismissed his counterclaim. Ultimately, a Pulaski County jury awarded Garcia $8,000 plus interest. On July 2, 2009, the trial court denied Garcia's motion for a new trial and his motion to alter, amend, or vacate the judgment.

Garcia appealed the trial court's order granting a directed verdict on both the malicious prosecution and abuse of process claims. Whitaker cross-appealed the trial court's order enforcing Garcia's mechanic's lien. The Court of Appeals found that Whitaker's cross-appeal was not preserved for review. The Court of Appeals also

affirmed the trial court's orders directing verdicts on both the malicious prosecution and abuse of process claims.

With respect to the malicious prosecution claim, the Court of Appeals agreed with the trial court's invocation of the advice of counsel defense. In regards to the abuse of process claim, the Court of Appeals stated that Whitaker's process was normal and inside the ordinary course of the proceedings. We granted discretionary review.

▮▮▮ A directed verdict should not be granted unless the evidence is insufficient to sustain a verdict. *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 64 (Ky.1996). Therefore, "a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Bierman v. Klapheke*, 967 S.W.2d 16, 18–19 (Ky. 1998). In the event there is differing proof, "it is the responsibility of the jury to determine and resolve such conflicts, as well as matters affecting the credibility of witnesses." *Id.* at 19. Additionally, "[a] motion for directed verdict admits the truth of all evidence which is favorable to the party against whom the motion is made." *National Collegiate Athletic Ass'n By and Through Bellarmine College v. Hornung*, 754 S.W.2d 855, 860 (Ky.1988) (citing *Kentucky & Indiana Terminal R. Co. v. Cantrell*, 298 Ky. 743, 184 S.W.2d 111 (1944)). With these standards of review in mind, we turn to the case *sub judice*.

### Malicious Prosecution

▮▮▮ The law generally disfavors the tort of malicious prosecution because "all persons [should] be able to freely resort to the courts for redress of a wrong[.]" *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981). As a result, claimants alleging malicious prosecution must strictly comply with each element of the tort. *Id.* (citing *Davis v. Brady*, 218 Ky. 384, 291 S.W. 412 (1927)). To prevail on a claim of malicious prosecution, the claimant must prove the following elements:

(1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.

*Raine*, 621 S.W.2d at 899.

▮▮ In this appeal, we will focus on the element of probable cause since the trial court granted a directed verdict on the sole basis of its existence. Probable cause is that which "would induce a man of ordinary prudence to believe that the person prosecuted had committed the crime charged." *Louisville & N.R. Co. v. Sharp*, 282 Ky. 758, 140 S.W.2d 383, 385 (1940).

The offense of theft by failure to make required disposition is proscribed in KRS 514.070. The statute lists the following elements:

(1) A person is guilty of theft by failure to make required disposition of property received when:

(a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and

(b) He intentionally deals with the property as his own and fails to make the required payment or disposition.

This statute appears to be facially inapplicable to the fact pattern presented in Whitaker's criminal complaint. As we acknowledged in *Commonwealth v. Perry*, "examples of conduct that would fall within the scope of KRS 514.070 [include] failure to turn over collected sales tax, failure of contractor to apply monies to satisfy materialmans' liens, failure to apply withheld wages to pension fund, and bank's failure to credit deposited funds to customer's account." 219 S.W.3d 720, 721 (Ky.2007) (quoting *Commonwealth v. Jeter*, 590 S.W.2d 346, 347 (Ky.App.1979)). Therefore, this statute would likely be applicable if, for example, Whitaker paid Garcia money to order a new timing belt, after which Garcia used the money for something else. *See Perry*, 219 S.W.3d at 720 (holding that KRS 514.070 applies to a situation where a mechanic is given money to purchase a new engine from a third party source, and then the mechanic fails to either purchase the engine or return the money). Yet, Garcia could not have misapplied any funds because Whitaker had yet to pay him.

■ However, whether Whitaker had probable cause to believe that Garcia committed theft by failure to make required disposition of the Porsche is only a part of a larger inquiry. It was the County Attorney, not Whitaker, who determined the appropriate criminal charge; and it was the judge, not Whitaker, who determined the existence of probable cause and issued the arrest warrant. That is why the advice of counsel normally immunizes a defendant from a lack of probable cause claim.

■ Said another way, the advice of counsel defense is customarily applicable to situations where an aggrieved party seeks the advice of an attorney and presents to him fairly and accurately all the relevant facts, after which the attorney counsels the party on whether or not to file a complaint. *See, e.g., Flynn v. Songer*, 399 S.W.2d 491 (Ky.1966). The advice of counsel defense may also apply "regardless of whether the counsel is a private attorney or a public prosecuting attorney." *Smith v. Kidd*, 246 S.W.2d 155, 159 (Ky. 1952) (citing *Dyer v. Singer Sewing Machine Co.*, 164 Ky. 538, 175 S.W. 1037 (1915)). Consequently, the defense has been extended to situations, as is here, where the complainant files a criminal complaint and swears to the facts alleged, after which the prosecuting attorney and judge make a determination as to whether probable cause exists. *See Reid v. True*, 302 S.W.2d 846 (Ky.1957); *Puckett v. Clark*, 410 S.W.2d 154 (Ky.1966). Therefore, as it has been noted, the advice of counsel defense is in actual effect another method of proving probable cause. *Flynn*, 399 S.W.2d at 495.

■ However, there is one very important qualification for the advice of counsel defense to apply. The allegations upon which the advising counsel acted must be truthful and complete. In the case at hand, Whitaker presented his facts to the County Attorney, who then prepared a formal criminal complaint. Whitaker then signed the criminal complaint under oath, as required by RCr 2.02. Subsequently, and in compliance with RCr 2.04(1), Judge Wood examined the criminal complaint and determined that probable cause existed to believe that Garcia committed the offense of theft by failure to make required disposition of property. Judge Wood also made a determination that a warrant of arrest, as opposed to a criminal summons, was appropriate. Without further analysis, it would appear that Whitaker qualifies for the advice of counsel defense. However, upon a closer inspection of the record, we find the advice of counsel defense is not available to Whitaker due to his blatant

concealment of material facts in his sworn criminal complaint.

Whitaker's criminal complaint stated as follows:

Defendant was hired to work on the Affiant's automobile and Defendant has refused to show the Affiant any receipts on the purchase of parts for the automobile. Affiant asked to see the receipts to pay for the work and Defendant has refused to show any receipts. Assistant County Attorney called the Defendant and told him to turn over the car or the receipts by 12:00 today at the County Attorney's Office and Defendant has failed to do so. Affiant has caught the Defendant in several lies regarding the hereabouts [sic] of the car while being worked on and the car was also seen being hauled on a car trailer Monday. Defendant told the Affiant it has not been moved. When he told the Defendant he had a witness to this incident Defendant stated he took it to London to get detailed.

The advice of counsel defense is "conditioned upon a full and fair disclosure of all material facts to the attorney advising prosecution." *Reid,* 302 S.W.2d at 847. We must adhere to this requirement in order to safeguard against exploitation of the defense through factual distortions aimed at obtaining favorable legal advice or, in this case, a warrant of arrest. Furthermore, "[w]e have held that where reliance is placed upon advice of counsel, if there is a dispute on conflicting evidence about the existence of a material fact disclosed, the question of full and fair disclosure is one for the jury." *Id.* (citing *Kidd,* 246 S.W.2d at 159).

We find numerous factual omissions in Whitaker's criminal complaint, any of which may induce a jury upon remand to find that Whitaker did not make a full and fair disclosure of all material facts. Notably, Whitaker failed to mention the following details: Garcia attempted to return Whitaker's Porsche to him in working order; Garcia offered the keys to Whitaker in order for him to conduct a test drive, which Whitaker rebuffed; neither party suggested nor agreed that receipts for each part purchased would be required in order to recoup payment; Garcia provided Whitaker with an itemized Autobahn Automotive invoice; despite the car being returned in working order, Whitaker failed to pay Garcia any money; and the car was being held as collateral. Furthermore, whether the County Attorney actually called Garcia and requested the receipts or the vehicle by noon on December 6, 2012, is a pivotal fact in dispute and must be resolved by the jury. Therefore, the trial court erred in directing a verdict of dismissal on the malicious prosecution claim based on the advice of counsel defense.

### Abuse of Process

We now turn to the abuse of process claim. This Court has succinctly described an abuse of process claim as the improper "use[ ] [of] a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which that process is not designed...." *Sprint Communications Co., L.P. v. Leggett,* 307 S.W.3d 109, 113 (Ky.2010) (citing Restatement (Second) of Torts § 682 (1977)). The tort is comprised of the following two necessary elements: "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Simpson v. Laytart,* 962 S.W.2d 392, 394 (Ky.1998) (citing *Bonnie Braes Farms, Inc. v. Robinson,* 598 S.W.2d 765 (Ky.App.1980); *Williams v. Central Concrete Inc.,* 599 S.W.2d 460 (Ky.App.1980)).

We believe the trial court incorrectly concluded that Garcia's abuse of

process claim was contingent on the success of his malicious prosecution claim. The trial court's legal conclusion is neither accurate nor supported by any precedential authority. While the two torts of abuse of process and malicious prosecution often accompany one another, they are distinct causes of action. *Simpson*, 962 S.W.2d at 394; *Raine*, 621 S.W.2d at 899. As aforementioned, malicious prosecution occurs when one institutes a criminal or civil action or process "maliciously or without justification." *Simpson*, 962 S.W.2d at 394. "Abuse of process, however, consists of 'the employment of legal process for some other purpose than that which it was intended by the law to effect.'" *Id.* (quoting *Raine*, 621 S.W.2d at 899). Indeed, we must look for "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process...." *Id.* (citing W. Prosser, Handbook of the Law of Torts, Section 121 (4th ed.1971)).

We also disagree with the Court of Appeals' determination that a directed verdict in favor of Whitaker was appropriate. While we can find no case in the Commonwealth which is factually on point, we believe, in viewing the evidence most favorable to Garcia, that a *prima facie* case of abuse of process was established.

In regards to the first element, we find that a jury could have determined that Whitaker harbored an ulterior purpose—that purpose being to use the criminal complaint and resulting arrest to obtain his vehicle without compensating Garcia. We must note that a practicing criminal attorney with over twenty years of experience would likely be aware that Garcia retained a statutory lien, pursuant to KRS 376.270, for the reasonable price of repairs to his vehicle. However, we cannot speculate as to Whitaker's subjective knowledge, rather we must rely on the testimony and evidence elicited at trial. Nonetheless, Whitaker's testimony alluded to the fact that the sole reason for filing the criminal complaint was to obtain his vehicle. This fact is further highlighted by Whitaker's failure to take any part in the further prosecution of Garcia after he recouped possession of his vehicle. Even after receiving receipts to Whitaker's satisfaction and notice of Garcia's lien, Whitaker still refused to compensate Garcia. Thusly, it was possible for the jury to conclude that Whitaker's ulterior purpose in instituting the criminal process was to defeat the statutory lien and evade a valid debt.

We also find sufficient evidence that Garcia committed a definite act not legitimate in the use of the process. There is no doubt that it was outside the ordinary process for Whitaker to accompany the arresting deputy sheriff and detective to Garcia's home in perfecting the arrest and obtaining his Porsche. We are confounded as to why the arresting sheriff required Garcia to not only disclose the whereabouts of Whitaker's vehicle, but to forfeit the property to which he lawfully held. Undoubtedly, this is an illegitimate use of the criminal process.

In his brief to the Court of Appeals, Garcia made an additional argument that abuse of process occurred when the County Attorney told Garcia that Whitaker agreed to pay Garcia the amount owed if he would plead guilty to a lesser offense. The Court of Appeals found that this situation was merely an attempt to procure a stipulation of probable cause and did not constitute an abuse of process. We assume Garcia has abandoned this argument since he failed to assert it in his brief to this Court. Accordingly, we will not address the argument. *See* CR 76.12(4)(c)(v).

To conclude, we find that the trial court and the Court of Appeals erred in finding

that Whitaker qualified for the advice of counsel defense. We further conclude that Garcia submitted sufficient evidence to survive a motion for a directed verdict on the abuse of process claim. For the forgoing reasons, we hereby reverse the opinion of the Court of Appeals, vacate in part the judgment of the Pulaski Circuit Court, and remand for further proceedings consistent with this opinion.

All sitting. All concur.