*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0030p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THOMAS ABBOTT; LARRY ARTHUR ORMSBY;
ANTONIO MENDOZA; EDSOL J. STANLEY,
                    *Plaintiffs-Appellants,*

        *v.*

STATE OF MICHIGAN; MICHIGAN DEPARTMENT OF
TREASURY; MICHIGAN DEPARTMENT OF
CORRECTIONS,
                    *Defendants,*

JENNIFER GRANHOLM, Governor; ROBERT KLEINE,
Treasurer; PATRICIA CARUSO, Director,
                    *Defendants-Appellees.*

No. 06-1434

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-72793—Marianne O. Battani, District Judge.

Argued: December 8, 2006

Decided and Filed: January 22, 2007

Before: SILER, MOORE, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Timothy S. Barkovic, St. Clair Shores, Michigan, for Appellants. Suann D. Cochran, STATE OF MICHIGAN, DEPARTMENT OF ATTORNEY GENERAL, Detroit, Michigan, for Appellees. **ON BRIEF:** Timothy S. Barkovic, St. Clair Shores, Michigan, for Appellants. Suann D. Cochran, Juandisha M. Harris, STATE OF MICHIGAN, DEPARTMENT OF ATTORNEY GENERAL, Detroit, Michigan, for Appellees.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Plaintiffs-Appellants Thomas Abbott ("Abbott"), Larry Arthur Ormsby ("Ormsby"), Antonio Mendoza ("Mendoza"), and Edsol J. Stanley ("Stanley") appeal from the district court's judgment dismissing their claims. The plaintiffs filed

a putative class action alleging that Defendants State of Michigan, the Michigan Department of Treasury, and the Michigan Department of Corrections,[1] together with Defendants-Appellees Governor Jennifer Granholm, Treasurer Jay B. Rising,[2] and Department of Corrections Director Patricia L. Caruso, converted their pension benefits in violation of the Due Process Clause, ERISA, and state law. The district court concluded that the *Rooker-Feldman* doctrine and res judicata required dismissal of the plaintiffs' claims. For those same reasons, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Abbott, Mendoza, Ormsby, and Stanley are inmates at Michigan correctional facilities. Pursuant to the State Correctional Facility Reimbursement Act ("SCFRA"), MICH. COMP. LAWS § 800.401-406, the state sought reimbursement for the costs of incarceration from each plaintiff's assets, including pension benefits. SCFRA sets forth the following procedures by which the state may seek reimbursement for the costs of incarceration:

> (1)  . . . . The attorney general may file a complaint in the circuit court for the county from which a prisoner was sentenced, stating that the person is or has been a prisoner in a state correctional facility, that there is good cause to believe that the prisoner has assets, and praying that the assets be used to reimburse the state for the expenses incurred or to be incurred, or both, by the state for the cost of care of the person as a prisoner.
>
> (2)  Upon the filing of the complaint under subsection (1), the court shall issue an order to show cause why the prayer of the complainant should not be granted. The complaint and order shall be served upon the prisoner personally or, if the prisoner is confined in a state correctional facility, by registered mail addressed to the prisoner in care of the chief administrator of the state correctional facility where the prisoner is housed, at least 30 days before the date of hearing on the complaint and order.
>
> (3)  At the time of the hearing on the complaint and order, if it appears that the prisoner has any assets which ought to be subjected to the claim of the state under this act, the court shall issue an order requiring any person, corporation, or other legal entity possessed or having custody of those assets to appropriate and apply the assets or a portion thereof toward reimbursing the state as provided for under this act.

MICH. COMP. LAWS § 800.404.

On March 10, 1997, the Clinton County Circuit Court entered an order against Abbott stating, in part:

> Defendant Thomas K. Abbott shall immediately direct General Motors Corporation, it's [sic] subsidiary or designee, to cause any pension payments due Defendant Thomas K. Abbott to be made payable to "Thomas K. Abbott, #***" at:  PRISON

---

[1] The plaintiffs stipulated in the district court to dismissal of the State of Michigan, the Michigan Department of Treasury, and the Michigan Department of Corrections as defendants. *See* Joint Appendix ("J.A.") at 90 (Pls.' Resp. to Mot. to Dismiss at 17).

[2] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Robert Kleine, the successor to Jay Rising as Treasurer for the State of Michigan, has been automatically substituted as a party.

> ADDRESS, or Thomas K. Abbott's then current prison address. If Defendant should refuse to so direct, this order shall be treated as the direction of the defendant to General Motors that the pension payments shall be made as directed above. Payments shall be made in this manner until Defendant Thomas K. Abbott is released from the physical custody of the Department of Corrections, or until further order of this Court.

Joint Appendix ("J.A.") at 54. The order required the warden "in the continuing capacity as receiver" to deposit pension checks into Abbott's prison account, with 33% of the funds disbursed to the State of Michigan and the remainder to Abbott's family. J.A. at 54-55.

Abbott appealed the Circuit Court's order, arguing that the SCFRA order was an assignment of his pension payments in violation of provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The Michigan Court of Appeals concluded that the SCFRA order violated the anti-alienation provisions of ERISA, *State Treasurer v. Abbott*, 640 N.W.2d 888 (Mich. Ct. App. 2001), but the Michigan Supreme Court granted leave to appeal and held that the SCFRA order did not violate ERISA, *State Treasurer v. Abbott*, 660 N.W.2d 714 (Mich. 2003).[3] Abbott filed a petition for certiorari in the United States Supreme Court, which was denied. *Abbott v. Rising*, 540 U.S. 1112 (2004).

The Oakland County Circuit Court entered similar orders against Mendoza on December 17, 1997, granting 60% of any pension payments to the state, and against Stanley on June 30, 2004, granting 90% to the state. The Ogemaw County Circuit Court entered an order against Ormsby on August 13, 2002, granting 90% of his assets and the funds then in his prison account to the state but making no specific mention of pension payments.

On July 15, 2005, Abbott, Ormsby, Mendoza, and Stanley filed a complaint in federal district court alleging that the SCFRA orders violated the Due Process Clause, ERISA, and state law and seeking to establish a class action on behalf of "all other prisoners, past and present, who have had any pension benefits diverted in violation of ERISA." J.A. at 10 (Compl. at 5). On October 7, 2005, the defendants filed a motion to dismiss or for summary judgment arguing, *inter alia*, that the district court did not have jurisdiction over the plaintiffs' claims because of the *Rooker-Feldman* doctrine and that the claims were barred by res judicata. The district court granted the motion on those two grounds on January 31, 2006.[4] The plaintiffs timely appealed.

## II. ANALYSIS

### A. Jurisdiction

#### 1. Standard of Review

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004), *cert. denied*, 544 U.S. 961 (2005). Because the district court made essentially no factual findings in

---

[3] The Michigan Supreme Court's decision is in tension with one of our decisions, *DaimlerChrysler Corp. v. Cox*, 447 F.3d 967 (6th Cir. 2006), *petition for cert. filed*, 75 U.S.L.W. 3094 (U.S. Aug. 21, 2006) (No. 06-273), and a series of Eastern District of Michigan decisions dating back to *Roberts v. Baugh*, 986 F. Supp. 1074 (E.D. Mich. 1997).

[4] The district court granted the motion before deciding whether or not to certify a class action. Accordingly, only the claims of the four named plaintiffs are before the court.

deciding that it lacked jurisdiction, the defendants' motion on this issue is properly treated as an attack on the claim of jurisdiction on its face. *Id.* Accordingly, we review the district court's decision de novo. *Id.*

### 2. *Rooker-Feldman*

The Supreme Court is vested with exclusive jurisdiction over appeals from final state-court judgments. *Lance v. Dennis*, --- U.S. ---, 126 S. Ct. 1198, 1200 (2006). Thus, "[t]he *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Id.* at 1199 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine applies "only when a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). Additionally, the *Rooker-Feldman* doctrine "does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely a general challenge to the constitutionality of the state law applied in the state action, rather than a challenge to the law's application in a particular state case." *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003).

The plaintiffs have complained of specific injuries that they have suffered, but have also requested, among other relief, that the district court "permanently enjoin the Defendants from enforcing of [sic] the SCFRA as it applies to ERISA-qualified pension benefits." J.A. at 22 (Compl. at 17). Broadly construed, the plaintiffs' complaint could be read as bringing a general challenge that SCFRA violates ERISA and the Supremacy Clause. The *Rooker-Feldman* doctrine does not deprive the federal courts of this general challenge to SCFRA. *Hood*, 341 F.3d at 597.

Regarding whether plaintiffs' claims of specific injuries that they have suffered implicate the *Rooker-Feldman* doctrine, we have found the Second Circuit's guidance particularly instructive:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.
>     . . . . Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005) (quoted in *McCormick*, 451 F.3d at 394). Importantly, "there are certain exceptions to this rule of thumb. For example, if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions [is] in fact a challenge to the judgment itself." *McCormick*, 451 F.3d at 394.

In this case, the plaintiffs are ostensibly complaining of injuries caused by the actions of third parties—the conversion of their pension benefits by state officials—but those actions were the direct and immediate products of the state-court SCFRA judgments. The plaintiffs' claims and arguments make this clear: They assert that the state courts erred in issuing the SCFRA judgments and do not claim that the defendants have injured them in any way except by strictly executing those judgments. Accordingly, the plaintiffs' claims of specific injuries that they have suffered are actually challenges to the state-court SCFRA judgments and are barred by the *Rooker-Feldman* doctrine.

The plaintiffs argue that even if a federal-court plaintiff seeks relief from injuries caused by a state-court judgment, the *Rooker-Feldman* doctrine does not apply if the party did not have a reasonable opportunity to raise his or her claims in state court. *See, e.g.*, *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983) (stating that the doctrine applies "only to issues that the plaintiff had a reasonable opportunity to raise"), *cert. denied*, 467 U.S. 1210 (1984). The plaintiffs assert that they were denied a reasonable opportunity to litigate their ERISA claims during the SCFRA proceedings because their assets were frozen and their incarceration made it difficult to travel, hire counsel, or otherwise prepare a defense. The defendants assert that, under SCFRA, a prisoner receives a copy of the complaint and the show-cause order at least 30 days before a show-cause hearing, MICH. COMP. LAWS § 800.404(2), and that any of the plaintiffs could have petitioned for a writ of habeas corpus to attend the hearing, requested a telephonic hearing, hired counsel, or filed motions.[5]

We believe that the Supreme Court's recent decisions do not support the plaintiffs' asserted "reasonable opportunity" exception to the *Rooker-Feldman* doctrine. Such an exception has been applied by various courts of appeals at one time or another, *see, e.g.*, *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 559-60 (7th Cir. 1999); *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1998); *Robinson v. Ariyoshi*, 753 F.2d 1468, 1472-73 (9th Cir. 1985), *vacated on other grounds*, 477 U.S. 902 (1986); *Wood*, 715 F.2d at 1547-48, including this one, *see Johns v. Bonnyman*, 109 F. App'x 19, 21 (6th Cir. 2004) (unpublished order). However, these cases were decided during a period of time in which "many circuits, including this one, gave an expansive definition" of the scope of the doctrine. *McCormick*, 451 F.3d at 391.

More recently, the Supreme Court has emphasized the doctrine's narrow reach: "The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. Thus, in the limited circumstances in which a plaintiff complains of an injury directly caused by a state-court judgment, if the plaintiff believes that the trial court did not give him or her a reasonable opportunity to pursue a claim, the proper course of action is to appeal the judgment through the state-court system and then to seek review by writ of certiorari from the U.S. Supreme Court. *Cf. Postma v. First Fed. Sav. & Loan of Sioux City*, 74 F.3d 160, 162 n.3 (8th Cir. 1996) (collecting cases and concluding that "there is no procedural due process exception to the *Rooker-Feldman* doctrine"). However, if the plaintiff has a claim that is in any way independent of the state-court judgment, the *Rooker-Feldman* doctrine will not bar a federal court from exercising jurisdiction.[6]

---

[5] Indeed, it appears that Abbott availed himself of at least one of these options, because he raised his ERISA argument in state court and had it heard at the trial, appellate, and state supreme court levels.

[6] It appears to us that many of the opinions in which courts purported to apply an exception to the *Rooker-Feldman* doctrine based on the lack of a reasonable opportunity to litigate a claim in state court would have reached the same result had those courts instead applied the doctrine in this narrow fashion. *See, e.g.*, *Johns*, 109 F. App'x at 21 (applying an exception when the plaintiff's claimed injury was not caused by a discretionary state-court decision); *Long*, 182 F.3d at 559-60 (noting that the plaintiff's damage claims against the defendants could not have been raised in the

The plaintiffs' claims of particular injuries that they have suffered arise as a direct result of prior state-court judgments. Accordingly, the *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over their challenges to SCFRA seeking to overturn the state-court judgments. As explained above, however, the *Rooker-Feldman* doctrine does not prevent lower federal courts from exercising jurisdiction over their general challenge to the validity of SCFRA.

## B.  Res Judicata

Res judicata may bar any claims over which the federal courts have jurisdiction, including both claims of injuries caused by state-court judgments and general challenges to state statutes. Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state. 28 U.S.C. § 1738. Michigan recognizes two preclusion doctrines: res judicata, or claim preclusion; and collateral estoppel, or issue preclusion.[7]

### 1.  Standard of Review

We review de novo a district court's application of res judicata law. *Bates v. Twp. of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006).

### 2.  Claim Preclusion

Claim preclusion "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Claim preclusion "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* "[T]he burden of proving the applicability of the doctrine of res judicata is on the party asserting it." *Baraga County v. State Tax Comm'n*, 645 N.W.2d 13, 16 (Mich. 2002).

The Supreme Court has held, however, that as a matter of federal law, "res judicata principles do not apply 'where the party against whom an earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.'" *Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1144 (6th Cir. 1985) (quoting *Allen v. McCurry*, 449 U.S. 90, 95 (1980)). As a constitutional minimum, the state-court proceedings must "satisfy the applicable requirements of the Due Process Clause" in order for their decisions to warrant preclusive effect. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982). Due process generally requires "notice and an opportunity to respond." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985).

This case satisfies all three prongs of the Michigan Supreme Court's test to determine claim preclusion: the prior state-court decisions at issue were decided on the merits and involved the same parties, and any due process, ERISA, or state-law arguments were or could have been resolved in those actions. The plaintiffs generally asserted in the federal district court that the SCFRA actions did not satisfy due process requirements because of the litigation difficulties that the plaintiffs faced due to their incarceration and the freezing of their assets. However, the defendants moved for

---

state eviction proceeding and did not seek to overturn the state-court judgment); *Whiteford*, 155 F.3d at 674 (noting that the plaintiff's claims did not require the district court to determine that the prior decision was wrong or to void the judgment).

[7] Because we conclude that all of the plaintiffs' claims are barred by the doctrine of claim preclusion, we do not discuss whether any claims are also barred by issue preclusion.

summary judgment on this issue.[8] Under the familiar standard, summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(c). The defendants submitted to the district court copies of the state-court orders and cited the applicable statutory provisions. Because the orders themselves and the statutory provisions by which SCFRA proceedings are governed show that SCFRA proceedings generally provide prisoners a full and fair opportunity to litigate any of their claims, the plaintiffs were required to come forth with evidence that they did not have a full and fair opportunity to litigate their claims in their particular cases. They provided none, instead relying on unsupported assertions in their brief, and thus summary judgment for the defendants was proper.

All of the claims raised by the plaintiffs in this case could have been or were litigated in prior state-court proceedings between the same parties. The plaintiffs have not provided any evidence that they did not have a full and fair opportunity to litigate their claims in state court. Accordingly, the doctrine of claim preclusion bars this action.

### III.  CONCLUSION

Because the federal courts lack jurisdiction over the plaintiffs' claims that they were injured by the state-court SCFRA judgments, and because those claims as well as the plaintiffs' general challenge to the validity of SCFRA are barred by res judicata, we **AFFIRM** the judgment of the district court.

---

[8] A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is treated as one for summary judgment if "matters outside the pleading are presented to and not excluded by the court." FED. R. CIV. P. 12(b). The defendants filed a Motion to Dismiss or Alternatively for Summary Judgment and presented copies of the SCFRA orders against the plaintiffs to the district court as attachments to their motion. The district court did not exclude those orders and, accordingly, we treat the motion as one for summary judgment on this issue.