**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0451n.06
Filed: June 26, 2007

**No. 06-6131**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **J.P. SILVERTON INDUSTRIES L.P.,** | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | |
| **WAYNE WILLIS,** | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| **NORBERT H. SOHM,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| *Defendant-Appellee,* | ) | DISTRICT OF KENTUCKY |
| | ) | |
| **WARD CORRELL,** | ) | O P I N I O N |
| | ) | |
| *Defendant-Appellee,* | ) | |
| | ) | |
| **UNKNOWN DEFENDANTS,** | ) | |
| | ) | |
| *Defendants-Appellees,* | ) | |
| | ) | |
| **CHARLES A. KINCAID,** | ) | |
| | ) | |
| *Defendant-Appellee,* | ) | |
| | ) | |
| **COMMONWEALTH OF KENTUCKY,** | ) | |
| | ) | |
| *Defendant-Appellee.* | ) | |

**BEFORE:** CLAY, GILMAN, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** J.P. Silverton Industries L.P. and Wayne Willis appeal the district court's grant of summary judgment disposing of their action for violation of their constitutionally protected property rights and various causes of action under state law. For the reasons set forth below, we affirm the judgment of the district court.

## I. BACKGROUND

On October 22, 2002, appellee Ward Correll obtained a judgment against L.D.R., Inc., Linda Stetler ("Stetler"), and Denny Stetler, not parties to this suit, and an order of sale for the Spring Creek Inn in satisfaction of the judgment. Appellee Sohm, the Master Commissioner of the Clinton Circuit Court, was ordered to carry out the sale, which was scheduled for June 4, 2004, at 10:00 AM.[1] Before the scheduled sale, appellant Silverton attempted to pay Correll the outstanding judgment, and thereby obtain the property, but Correll refused. Therefore, on June 3, 2004, Silverton paid $299,500 into the Clinton County Court in order to satisfy the judgment and obtain the property. The funds were deposited with the court in the name of Linda Stetler.

On June 4, appellant Wayne Willis, acting on behalf of Silverton, came to Albany, Kentucky, for the sale of the Spring Creek Inn. That morning, he paid a further $12,000 into the court, "to make sure there was more than enough to pay for" the outstanding judgment. June 21, 2004 Tr. at 12. He was accompanied by Stetler, and the two approached Sohm to discuss the scheduled sale.

---

[1]This was the second scheduled sale date. The day before the original date, L.D.R. filed for bankruptcy, which stayed the sale. On May 17, 2004, the Clinton County Court entered an order, in which it stated, "It now appearing that the bankruptcy court stay is no longer in effect on the sale of the property, IT IS HEREBY ORDERED AND ADJUDGED . . . [that t]he Master Commissioner . . . is hereby directed to proceed with the sale . . . ." May 17, 2004 Order at 1.

The parties dispute the content of the ensuing conversation; Silverton and Willis alleged in their complaint that "Mr. Sohm advised Mr. Willis and Ms. Stetler that the indebtedness secured by the mortgage had been paid, and that consequently the sale would not occur." Amended Complaint at ¶ 20. Following this conversation, Willis departed for Ohio. Before doing so, he filed with the court a "Motion to Enjoin Sale," but failed to file a notice of a hearing on the motion.

That morning, the Clinton County Court held a brief hearing on the motion; the court denied the motion on the basis that it failed to give notice of a time for a hearing, and that "the amount tendered to the Circuit Court Clerk is not sufficient to cover the amount in controversy, the interest, the costs, advertising costs, legal fees, . . . et cetera." June 4, 2004 Tr. at 3. The amount owed was $336,551.67, exclusive of attorney's fees, court costs, costs of sale, appraisal fees, late charges, and insurance. Sohm was therefore ordered to proceed with the sale, and held the sale of the property at 10:00 AM as scheduled. No representative of Silverton was present at the sale, and the property was purchased by Correll. Several days later, the Kentucky Department of Financial Institutions (the "DFI"), Correll, and Charles Kincaid, another of Stetler's creditors, instituted garnishment actions against the funds paid into the court in Stetler's name. The court held a hearing on the garnishment actions, and determined that the $12,498.12 Kincaid sought was properly subject to garnishment, but did not order garnishment of the funds sought by Correll or the DFI.

Appellants then filed a motion to set aside the sale. At a subsequent hearing, the court denied the motion, determining that the amount paid was insufficient to satisfy the judgment and the sale was proper. Silverton and Willis thereafter filed suit in the United States District Court for the Western District of Kentucky against Sohm, Correll, the DFI, Kincaid, and other unnamed

defendants. They alleged that Sohm and Correll had deprived the plaintiffs of their constitutionally protected property rights under color of state law in violation of 42 U.S.C. § 1983, and conspired to deprive the plaintiffs of those same rights. They also made state-law claims of fraud, official misconduct, interference with prospective economic advantage, abuse of process, and malicious prosecution against various of the defendants. They sought $500,000 in compensatory and $1,000,000 in punitive damages, as well as attorney's fees.

Before discovery was conducted, the defendants filed motions to dismiss the case. The district court granted the motions as motions for summary judgment on December 28, 2005. The district court determined that the claims against the DFI were barred by sovereign immunity, and that "the evidence in the various filings provides no support for Silverton's allegation that Mr. Sohm misled Mr. Willis and/or Ms. Stetler regarding the sale." *J.P. Silverton Indus. L.P. v. Sohm*, No. 04-CV-128, 2005 U.S. Dist. LEXIS 38351, at *11 (W.D. Ky. Dec. 28, 2005). The district court concluded, "Without this, Silverton's claims cannot stand. The civil rights claims (Counts I and II) rely on it, as does the fraud claim (Count III), as well as the violation of K.R.S. 522.020 *et seq.* (Count IV) [official misconduct] and the claim for interference with prospective economic advantage (Count V)." *Id.* The district court also concluded that the claims against Kincaid, Correll, and the DFI for abuse of process and against Correll and the DFI for malicious prosecution (Counts VI and VIII) arising out of the garnishment actions were barred by issue preclusion. *Id.* at *12-13.

Silverton and Willis then filed a motion to alter or amend the denial, appending the affidavit of Linda Stetler. The district court denied the motion, concluding that the affidavit from Stetler did not materially contradict the testimony in the state court proceedings on which the court had relied

in granting the motions for summary judgment. Silverton and Willis timely appeal both the grant of summary judgment and the denial of the motion to alter or amend. They argue that the district court improperly converted appellees' motions to motions for summary judgment, that claim and issue preclusion are not applicable, that they were denied the right to conduct discovery, and that there were disputed questions of material fact rendering summary judgment improper. They do not contest the district court's determination that the DFI is entitled to sovereign immunity, so this opinion will not address their claims against the DFI. Sohm argues in addition that he was entitled to judicial immunity and that appellants lacked a constitutionally protected interest in the Spring Creek Inn, which appellants contest. We will address only the issues we find dispositive.

## II. TREATMENT OF MOTION AS ONE FOR SUMMARY JUDGMENT

Whether a motion to dismiss can properly be considered as a motion for summary judgment is a matter of law that this court reviews *de novo*. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007) ("This court reviews questions of law *de novo*."); *see also Max Arnold & Sons, L.L.C. v. W.L. Hailey & Co.*, 452 F.3d 494, 502-04 (6th Cir. 2006) (conducting *de novo* review of whether a motion was properly considered as a motion for summary judgment or for judgment on the pleadings).

Appellants first argue that appellee Sohm's styling of his motion as a "motion to dismiss" *or* a "motion for summary judgment/judgment on the pleadings" was improper. However, filing motions under multiple legal characterizations is an accepted practice. *See, e.g.*, *Hercules, Inc. v. United States*, 516 U.S. 417, 426 n.7 (1996) ("motion to dismiss and for summary judgment"); *Anderson v. Creighton*, 483 U.S. 635, 637 (1987) ("motion to dismiss or for summary judgment");

*Abbott v. Michigan*, 474 F.3d 324, 327 (6th Cir. 2007) (same).  Moreover, appellants allege no conceivable harm as a result of Sohm's styling of his motion.

Appellants also argue that the district court should not have treated the motion as one for summary judgment.[2]  Federal Rule of Civil Procedure 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .

Although a court may decide a summary judgment motion on the basis of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, *if any*," Fed. R. Civ. P. 56(b) (emphasis added), the rules do not require the moving party to submit any of these filings in order for a court to consider a motion as one for summary judgment.

The Sixth Circuit has noted that "[t]here are exceptions to th[e] general rule" that "matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment."  *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).  Without converting the motion, "[c]ourts may . . . consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."  *Id.*  Appellee Sohm submitted twelve supporting exhibits with his motion to dismiss, all of which

---

[2]Although Sohm styled his motion as either a motion to dismiss or a motion for summary judgment, the district court's treatment of the motion as one for summary judgment will be discussed as a "conversion" from a motion to dismiss to one for summary judgment, because the district court filed a notice of conversion, and because the motion was filed as Sohm's first response to the complaint. *See* Fed. R. Civ. P. 12(b) ("A motion making any of these defenses shall be made before pleading if a further pleading is permitted.").

were public records. Under the rule in *Jackson*, the district court would have been permitted to dispose of Sohm's motion under Rule 12(b)(6) and still consider the attached records. However, neither *Jackson* nor other Sixth Circuit cases stating the same rule, *see, e.g.*, *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005); *New Eng. Health Care Employees Pension Fund v. Ernst & Young, L.L.P.*, 336 F.3d 495, 501 (6th Cir. 2003), *forbid* district courts to convert 12(b)(6) motions into summary judgment motions when the court accepts the filing of public records in support of the motion. Thus, it is not clear that the district court's decision was in error.

Perhaps more significantly, appellants do not explain how the district court's conversion of the motion to one for summary judgment prejudiced them. *See Harrington v. Vandalia-Butler Bd. of Educ.*, 649 F.2d 434, 436 (6th Cir. 1981) (subjecting a *sua sponte* grant of summary judgment to harmless error review). The principal requirement for conversion to a summary judgment motion is that "[w]here one party is likely to be surprised by" the court's consideration of a motion to dismiss as one for summary judgment, "notice is required." *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998). In this case, notice was provided, and appellants therefore should have been aware that they "had to come forward with all of [their] evidence." *Salehpour*, 159 F.3d at 204. Moreover, the district court would have been free to consider all of the materials submitted with Sohm's motion even if the district court had not converted the motion. Thus, it is not clear what, if anything, would have been altered if the district court had disposed of Sohm's motion as a motion to dismiss, as appellants argue it should have.

## III. IMMUNITY

This court reviews the question of whether a defendant is "'entitled to absolute or qualified immunity *de novo*, as that issue is a question of law.'" *Barnes v. Wright*, 449 F.3d 709, 714 (6th Cir. 2006) (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1000 (6th Cir. 1999)). Sohm contends on appeal, as he did before the district court,[3] that he is entitled to absolute judicial immunity for his acts in overseeing the public sale of the Spring Creek Inn.

There are two types of immunity defenses, as this court explained in *Dean v. Byerley*, 354 F.3d 540 (6th Cir. 2004):

> First, "for officials whose special functions or constitutional status requires complete protection from suit, we have recognized the defense of 'absolute immunity.'" For example, the Supreme Court has recognized the defense of absolute immunity for legislators performing legislative functions, judges performing judicial functions, prosecutors performing prosecutorial functions, and the President of the United States in his official capacity. . . . Second, "government officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

*Id.* at 554 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982); *Pray v. City of Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995) (quoting *Harlow*, 457 U.S. at 818)).

"The defense of absolute immunity provides a shield from liability for acts performed erroneously, even if alleged to have been done maliciously or corruptly." *Id.* Under the law of this Circuit,[4] "absolute judicial immunity is overcome only in two situations. First, a judge is not

---

[3]The district court did not address this issue in its opinion. However, the panel "may affirm on any grounds supported by the record, even though they may be different from the grounds relied on by the district court." *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994) .

[4]With regard to the claims for deprivation of constitutional rights and conspiracy to violate constitutional rights, whether Sohm is entitled to judicial immunity is a question of federal law, not

immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Depiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999) (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).

Appellants argue that Sohm's court-ordered execution of the sale of the Spring Creek Inn was not a judicial action. Absolute immunity can apply both to judges and to "other state officials engaged in adjudicative functions." *Dean*, 354 F.3d at 555. To determine "whether an act is 'judicial,'" courts must consider whether the act is "'normally performed by a judge'" – that is, they must examine "the particular act's relation to a general function normally performed by a judge"; and they must "assess whether the parties dealt with the judge in his or her judicial capacity." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (quoting *Mireles*, 502 U.S. at 13; *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

Under Kentucky law, a master commissioner is empowered to "perform such functions, including those of a receiver, as may be directed by an appropriate order of court." Ky. Rev. Stat. § 31A.010(6). The Kentucky statute does envision the possibility that a master commissioner might "perform[] judicial type functions," though it does not specify what those might be. *Id.* § 31A.010(4). A master commissioner's authority does include the execution of judicially-ordered foreclosure sales. *Peyton v. Young*, 659 S.W.2d 205, 206 (Ky. 1983). As this and other courts have recognized, however, foreclosure sales are typically performed by sheriffs, who are executive

Kentucky law. *Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law.").

officers. *See, e.g.*, *Wonderland Shopping Ctr. Venture L.P. v. C.D.C. Mortgage Capital, Inc.*, 274 F.3d 1085, 1089 (6th Cir. 2001); *Am. Fed. Sav. & Loan Ass'n v. McCaffrey*, 728 P.2d 155, 161 (Wash. 1986); *Robert R. Wisdom Oil Co. v. Gatewood*, 682 S.W.2d 882, 883 (Mo. Ct. App. 1984); *Baber v. Baber*, 474 P.2d 630, 631 (Colo. Ct. App. 1970).

Judges, by contrast, perform the discretionary, "adjudicative" functions of ordering foreclosure sales, and reviewing the sales afterward to determine whether irregularity occurred. *See, e.g.*, *Krohn v. Sweetheart Prop.*, 52 P.3d 774, 776 (Ariz. 2002); *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 664 N.E.2d 931, 933-34 (Ohio 1996); *Hayes v. Alaska USA Fed. Credit Union*, 767 P.2d 1158, 1160 (Alaska 1989). The execution of a foreclosure sale is thus not an action "normally performed by a judge," or analogous "to a general function normally performed by a judge." For this reason, a master commissioner conducting a foreclosure sale is not dealing with interested persons in a "judicial capacity," but rather in the capacity of an executive officer. Sohm is therefore not entitled to judicial immunity.

He is, however, entitled to absolute immunity under the theory of "quasi-judicial immunity."[5] As appellants point out, "[t]here was no judicial discretion involved in the act of orrdering the property for sale; it was a purely ministerial act." Appellants' Brief at 17. This is confirmed by Sohm's testimony at the hearing on appellants' motion to set aside the sale that "[t]he Judge orders the sale, and I follow the specific orders." June 26, 2004 Tr. at 6. "[A]n official is entitled to

---

[5]Although Sohm does not use the words "quasi-judicial immunity" in his brief, this clearly is the theory he is invoking in his argument that "Sohm, as an arm of the Court, merely carried out the Court's Order and is entitled to judicial immunity." Sohm and Kincaid's Brief at 14.

absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.'" *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)).

Other circuits have similarly recognized immunity for officials carrying out court orders. *See, e.g.*, *Forte v. Sullivan*, 935 F.2d 1, 3 (1st Cir. 1991); *Wolfe v. City of Pittsburgh*, 140 F.3d 236, 240 (3d Cir. 1998); *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996); *Dunn v. City of Elgin*, 347 F.3d 641, 647 (7th Cir. 2003); *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003); *Singh v. Magee*, 1 F. App'x 713, 714 (9th Cir. 2001); *Whitesel v. Sengenberger*, 222 F.3d 861, 869 (10th Cir. 2000); *Roland v. Phillips*, 19 F.3d 552, 555-56 (11th Cir. 1994). Thus, because in conducting the sale Sohm was simply following an order of the court, he is entitled to absolute quasi-judicial immunity. As the Tenth Circuit explained in *Whitesel*, absolute quasi-judicial immunity is unlike absolute judicial immunity in that it does not derive from the discretionary nature of an official's actions. Rather, it derives from the official's *lack* of discretion: "'Officials must not be called upon to answer for the legality of decisions which they are powerless to control. . . . Denying these officials absolute immunity for their acts would make them a light[]ning rod for harassing litigation aimed at judicial orders.'" 222 F.3d at 869 (quoting *Valdez v. City of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1981)). Because in selling the property Sohm was simply following the court's order, he is entitled to immunity from suit.

## IV. CLAIM AND ISSUE PRECLUSION

The district court granted summary judgment for appellees on the abuse of process and malicious prosecution claims, holding, "In the case of the garnishments, the issues of fact and law relating thereto were litigated and determined by final decision on the merits at the state court level," and therefore issue preclusion applies. 2005 U.S. Dist. LEXIS 38351, at *13. This court reviews *de novo* the district court's decision regarding whether claim or issue preclusion applies. *Abbott v. Michigan*, 474 F.3d 324, 331 (6th Cir. 2007). As this court explained in *Abbott*, "Res judicata may bar any claims over which the federal courts have jurisdiction, including both claims of injuries caused by state-court judgments and general challenges to state statutes. Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." 474 F.3d at 330 (citing 28 U.S.C. § 1738 ("[J]udicial proceedings shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.")).

Under Kentucky law, the elements of abuse of process are

> (1) an ulterior purpose and (2) a willful act in the use of the process *not proper in the regular conduct of the proceeding*. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required *and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion* even though with bad intentions.

- 12 -

*Simpson v. Laytart*, 962 S.W.2d 392, 394-95 (Ky. 1998) (emphasis added). The truth of Silverton and Willis's allegation that the defendants[6] used the garnishment process "to accomplish a purpose for which it is not designed," Complaint ¶ 53, is therefore a necessary element of the cause of action.

As to Kincaid, the Clinton County Court held that Stetler, who had challenged Kincaid's garnishment action, had "failed to meet her burden of proof to challenge the garnishment," and that "the garnishment in question is valid and enforceable." Order of Sept. 27, 2004, at 3; Order of Apr. 27, 2005. The court therefore ordered that the requested $12,498.12 be turned over to Kincaid. According to the court's order, Stetler was the party challenging the garnishment, and there was "no testimony from Wayne Willis or any representative of J.P. Silverton Limited Partnership regarding payment of these funds." Order of Apr. 27, 2005. Willis and Silverton had failed to file any objections to the garnishment, despite the fact that the Clinton County Court "repeatedly requested Silverton's attorney to send him copies of any motions in order to enable this Court to properly prepare for hearings [on the garnishment actions] and gave a business card to Silverton's attorney to ensure he had the Court's proper mailing address." Order of Sept. 27, 2004, at 1.

After the entry of the order approving Kincaid's garnishment, Silverton filed a motion to alter, amend, or vacate the order, "requesting that th[e] Court enter findings of fact and conclusions of law setting out with particularity the evidence and motions which were considered by th[e] Court when it determined that the sum of $12,498.12 . . . was subject to the garnishment filed by" Kincaid.

---

[6]The complaint includes abuse of process claims against Kincaid, Correll, and the DFI, and malicious prosecution claims against Correll and the DFI. As noted above, appellants have waived any dispute with the district court's determination that the DFI possesses sovereign immunity.

Order of Sept. 27, 2004, at 3. The court noted that the motion "set no time for a hearing," and therefore that the court "could have perfunctorily overruled this motion . . . , but it did not." *Id.* Instead, in its order denying the motion, the court detailed its findings as to the ownership of the funds deposited into the court, the nature of the instructions given when the money was deposited, the amount of Kincaid's unpaid judgment against Stetler from a prior action, and the credibility of the witnesses who testified at the garnishment hearing. *Id.* at 2-3. It then reiterated its earlier ruling that Kincaid's garnishment action was valid. *Id.* at 3.

The Clinton County Court's decisions indicate that with regard to Silverton and Willis's claims against Kincaid, all the requirements of collateral estoppel are fulfilled. Both the garnishment proceedings and the abuse of process claim involve the same issue – whether the garnishment action was "valid and enforceable," as the Kentucky court held, or instituted without probable cause and for a purpose other than the one for which the process was designed. The validity of the garnishment action was actually litigated and decided in Kentucky court, and that decision was necessary to the court's judgment that the money sought should be turned over to Kincaid. Silverton and Willis were given, if anything, *more* than a full and fair opportunity to litigate the matter, as they failed to avail themselves of the opportunity to participate in the original hearing, and upon their subsequent motion, the court generously provided them with the detailed order they requested, despite the fact that their motion to alter or amend could have been rejected on procedural grounds. Thus, the district court was correct in holding that appellants are estopped from further arguing the validity of Kincaid's garnishment action, and their malicious prosecution claim against him must fail.

As to Correll, however, collateral estoppel does not apply. The Kentucky court did not grant Correll's garnishment action, and so the validity of his action could not have been necessarily decided in his favor in state court.

## V.  CLAIMS AGAINST CORRELL

The determination that the DFI is entitled to sovereign immunity is thus uncontested, the claims against Sohm are barred by absolute quasi-judicial imunity, and the claim against Kincaid is barred by issue preclusion.  Only Correll remains.  Under a liberal reading of the complaint, it appears that appellants brought four claims against Correll:  violation of civil rights, conspiracy with Sohm to violate civil rights, abuse of process, and malicious prosecution.[7]  Although appellants' arguments on appeal do not refer to their claims against Correll specifically, they do contest the bases on which the district court granted summary judgment against them with respect to Correll:  namely, whether their claims relating to Correll's garnishment action are precluded by Kentucky court decisions, and whether there was a genuine issue of material fact regarding the alleged conspiracy between Sohm and Correll to prevent appellants from purchasing the Spring Creek Inn.  Therefore, we now address the grant of summary judgment with regard to Correll.

### A.  Abuse of Process and Malicious Prosecution

As noted above, under Kentucky law, there is "no liability" for abuse of process "where the defendant has done nothing more than carry out the process to its authorized conclusion even though

---

[7]We understand the state-law claim for official misconduct to be against Sohm only, as Correll is not a "public servant," and therefore the official misconduct law does not apply to him. Ky. Rev. Stat. §§ 522.010(1), 522.020.

with bad intentions." *Simpson*, 962 S.W.2d at 394-95. The complaint clearly states that Correll filed

his garnishment action "seeking to garnish the funds of Plaintiffs paid into the Court," Complaint

¶ 26, which is in fact the "authorized conclusion" of a garnishment action.[8] Thus, the abuse of

process claim must fail. Similarly, the Kentucky-law claim for malicious prosecution requires proof

that there is a "want of probable cause for the proceeding." *Raine v. Drasin*, 621 S.W.2d 895, 899

(Ky. 1981). Appellants do not allege that Correll instituted the garnishment action in the want of

probable cause, and it is undisputed that Stetler owed an outstanding debt to Correll; it was to satisfy

that unpaid debt that the state court ordered the foreclosure sale from which all of appellants' claims

spring. Thus, the malicious prosecution claim must also fail.

### B. Violation of Civil Rights

Finally, the complaint alleges that Correll violated appellants' constitutionally protected

property rights in violation of 42 U.S.C. § 1983, and conspired with Sohm to do so.[9] Although

Correll is a private person, the allegation that he conspired with Sohm, the Master Commissioner,

to violate appellants' civil rights suffices to raise the question of whether he acted under color of

---

[8]The complaint does allege that the defendants knew at the time that they filed their garnishment actions that the funds sought to be garnished were "in custodia legis" and therefore not subject to garnishment. Complaint ¶ 28. However, this is not an assertion of fact but a conclusion of law, and, in any case, the legal rule asserted is incorrect. While property in the custody of the court is not subject to attachment by *another* court, *see Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 192 (1941), it may be garnished pursuant to the order of the court in whose custody it lies, *see Patton v. Kentucky*, 195 S.W. 455, 459 (Ky. 1917).

[9]Although the paragraphs describing these counts do not name the defendants against whom the claims are brought, the complaint contains an earlier allegation that "Defendant Sohm acted with the intent of benefitting Defendant Correll and of enabling Defendant Correll to purchase the subject property for less than its true value," Complaint ¶ 24, which makes the matter reasonably clear.

state law as required by § 1983. *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 . . . .").

The constitutional right appellants allege was violated in this case is the right to be free from deprivation of property without due process of law. To show a deprivation of property without due process of law in violation of § 1983, appellants had to establish three elements:

> (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . . , (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

*Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)).

Assuming for the sake of argument that the first two elements are met, appellants cannot establish (and did not allege in their complaint) that they were not provided with adequate procedures to challenge the sale of the Spring Creek Inn to Correll. The Clinton County Court held a hearing before the sale to determine whether to grant the motion to enjoin the sale, and determined that the motion should be denied both because it was not accompanied by the required notice of a hearing, and because the amount appellants had paid into the court was "not sufficient to cover the amount in controversy, the interest, the costs, advertising costs, . . . et cetera." June 4, 2004 Tr. at 3. Thus, appellants were granted the procedural protections required by the Due Process Clause, and their claim fails. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an

opportunity for a hearing before he is deprived of any significant property interest.'") (quoting

*Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).

Even supposing that appellants' failure to appear before the Clinton County Court were attributable to reliance on Sohm's statements, rather than to their failure to follow Kentucky procedure for providing notice of a hearing, they cannot establish that they were denied adequate procedural safeguards. If a person is deprived of property, not "pursuant to any established state procedure," but, for example, because of "a random, unauthorized personal vendetta against" that person by a state official, then "the State cannot be required constitutionally to do the impossible by providing predeprivation process." *Zinermon v. Burch*, 494 U.S. 113, 129, 130 (1990). In such a case, postdeprivation process is sufficient, *id.* at 129, and appellants received that process as well.

The Clinton County Court held a full adversary hearing, at which both sides presented evidence, on appellants' subsequent motion to set aside the sale. After the motion was denied, the court also considered, and denied, appellants' motion to alter or amend the denial of the motion to set aside the sale. Appellants thus received the required postdeprivation procedural safeguards, and cannot establish that a constitutional violation occurred. Therefore, summary judgment in favor of Correll was proper with regard to the violation of civil rights and conspiracy in violation of civil rights claims as well.

## VI. CONCLUSION

For these reasons, the district court's grant of summary judgment is **AFFIRMED**.